## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

| | | |
|---|---|---|
| **ARTEZ SIMMONS,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **VS.** | : | |
| | : | **NO. 5:25-cv-00212-MTT-CHW** |
| **WARDEN TIMOTHY SALES,** *et al.*, | : | |
| | : | |
| **Defendants.** | : | |

## <u>ORDER & RECOMMENDATION</u>

Plaintiff Artez Simmons, a prisoner in Macon State Prison in Oglethorpe, Georgia, has filed a pro se civil rights complaint under 42 U.S.C. § 1983.  ECF No. 1.  Plaintiff has also filed a motion to proceed *in forma pauperis* ("IFP"), a motion to appoint counsel, and a motion for preliminary injunction.  ECF Nos. 2, 3, & 5.  On consideration of these filings, Plaintiff's motion for leave to proceed IFP (ECF No. 2) is **GRANTED**, and his motion to appoint counsel (ECF No. 3) is **DENIED**.    Additionally, it is **RECOMMENDED** that his motion for preliminary injunction (ECF No. 5) be **DENIED**. Finally, on preliminary review, Plaintiff will be permitted to proceed for further factual development on his claim that the Defendants Warden Timothy Sales and Commissioner Tyrone Oliver were deliberately indifferent to his safety.

### MOTION FOR LEAVE TO PROCEED IFP

Plaintiff seeks leave to proceed without prepayment of the filing fee or security therefor pursuant to 28 U.S.C. § 1915(a).  ECF No. 2.  As it appears Plaintiff is unable to

prepay the cost of commencing this action, his application to proceed IFP is hereby **GRANTED**.

However, even if a prisoner is allowed to proceed IFP, he must nevertheless pay the full amount of the $350.00 filing fee. 28 U.S.C. § 1915(b)(1). If the prisoner has sufficient assets, he must pay the filing fee in a lump sum. If sufficient assets are not in the account, the court must assess an initial partial filing fee based on the assets available. Despite this requirement, a prisoner may not be prohibited from bringing a civil action because he has no assets and no means by which to pay the initial partial filing fee. 28 U.S.C. § 1915(b)(4). In the event the prisoner has no assets, payment of the partial filing fee prior to filing will be waived.

Plaintiff's submissions indicate that he is unable to pay the initial partial filing fee. Accordingly, it is hereby **ORDERED** that his complaint be filed and that he be allowed to proceed without paying an initial partial filing fee.

I.    <u>Directions to Plaintiff's Custodian</u>

Plaintiff is required to make monthly payments of 20% of the deposits made to his prisoner account during the preceding month toward the full filing fee. The clerk of court is **DIRECTED** to send a copy of this Order to the business manager of the facility in which Plaintiff is incarcerated. It is **ORDERED** that the warden of the institution in which Plaintiff is incarcerated, or the sheriff of any county in which he is held in custody, and any successor custodians, shall each month cause to be remitted to the clerk of this Court twenty percent (20%) of the preceding month's income credited to Plaintiff's account at said institution until the $350.00 filing fee has been paid in full. 28 U.S.C. § 1915(b)(2). In

accordance with provisions of the Prison Litigation Reform Act ("PLRA"), Plaintiff's custodian is authorized to forward payments from the prisoner's account to the clerk of court each month until the filing fee is paid in full, provided the amount in the account exceeds $10.00. It is **ORDERED** that collection of monthly payments from Plaintiff's trust fund account continue until the entire $350.00 has been collected, notwithstanding the dismissal of Plaintiff's lawsuit or the granting of judgment against him prior to the collection of the full filing fee.

II.    Plaintiff's Obligations Upon Release

Plaintiff should keep in mind that his release from incarceration/detention does not release him from his obligation to pay the installments incurred while he was in custody. Plaintiff remains obligated to pay those installments justified by the income in his prisoner trust account while he was detained. If Plaintiff fails to remit such payments, the Court authorizes collection from Plaintiff of any balance due on these payments by any means permitted by law. Plaintiff's Complaint may be dismissed if he is able to make payments but fails to do so or if he otherwise fails to comply with the provisions of the PLRA.

**MOTION TO APPOINT COUNSEL**

Plaintiff has filed a motion for appointment of counsel. ECF No. 3. In it, he states that he cannot afford an attorney, his incarceration puts him at a disadvantage in litigating this case, and a trial will likely involve conflicting testimony. *Id*. at 1-2. As explained below, Plaintiff's motion is denied.

A district court "may request an attorney to represent any person unable to afford counsel."[1]    28 U.S.C. § 1915(e)(1).    There is, however, "no absolute constitutional right to the appointment of counsel" in a § 1983 lawsuit.    *Poole v. Lambert*, 819 F.2d 1025, 1028 (11th Cir. 1987) (per curiam) (citations omitted).    Appointment of counsel is "instead a privilege that is justified only by exceptional circumstances, such as where the facts and legal issues are so novel or complex as to require the assistance of a trained practitioner."    *Id.* (citations omitted).    In determining whether a case presents extraordinary circumstances, the Court considers

> (1) the type and complexity of the case; (2) whether the plaintiff is capable of adequately presenting his case; (3) whether the plaintiff is in a position to adequately investigate the case; (4) whether the evidence "will consist in large part of conflicting testimony so as to require skill in the presentation of evidence and in cross examination"; and (5) whether the appointment of counsel would be of service to the parties and the court "by sharpening the issues in the case, shaping the examination of witnesses, and thus shortening the trial and assisting in a just determination."    The District Court may also inquire into whether the plaintiff has made any effort to secure private counsel.

*DeJesus v. Lewis*, 14 F.4th 1182, 1204-05 (11th Cir. 2021) (quoting *Ulmer v. Chancellor*, 691 F.2d 209, 213 (5th Cir. 1982)).

The Court has considered Plaintiff's motion and—after applying the factors set forth above—concludes that appointed counsel is not justified.    Plaintiff has demonstrated the

---

[1] The statute, however, does not provide any funding to pay attorneys for their representation or authorize courts to compel attorneys to represent an indigent party in a civil case.    *See Mallard v. U.S. Dist. Ct. for S. Dist. of Iowa*, 490 U.S. 296, 310 (1989); *Taylor v. Pekerol*, 760 F. App'x 647, 651 (11th Cir. 2019) (per curiam) (citations omitted) (stating that the district court has no "inherent power" to compel counsel to represent a civil litigant and § 1915(e)(1) provides no such authority).

ability to litigate his case, including filing pleadings and motions sufficiently setting out his contentions to allow review by this Court.    Plaintiff's case is not complex. Additionally, at this early stage in the litigation, it is unclear if the case will proceed to trial. Thus, there is no basis to conclude that counsel will be needed for the presentation of evidence or cross examination of witnesses.    Plaintiff, "like any other litigant[], undoubtedly would [be] helped by the assistance of a lawyer, but [his] case is not so unusual" that appointed counsel is necessary.    *Bass v. Perrin*, 170 F.3d 1312, 1320 (11th Cir. 1999).

Accordingly, Plaintiff's motion seeking appointed counsel (ECF No. 2) is **DENIED**.    Should it later become apparent that legal assistance is required in order to avoid prejudice to Plaintiff's rights, the Court, **on its own motion**, will consider assisting him in securing legal counsel at that time.    Consequently, there is no need for Plaintiff to file additional requests for counsel.

## MOTION FOR PRELIMINARY INJUNCTION

Plaintiff has also filed a motion for a preliminary injunction.    ECF No. 5.    In the motion, Plaintiff asserts that he believes he may be transferred in retaliation for filing the instant lawsuit.    *Id.* at 2.    Plaintiff also contends that (1) he has a high likelihood of succeeding on the merits of his claim, (2) a transfer may cause him irreparable harm because he is receiving help from his fellow inmates at Macon State Prison to pursue this case, (3) the Defendants would not be harmed by a preliminary injunction preventing his transfer because there is no need to transfer him, and (4) a preliminary injunction would

serve the public interest because it would allow this case to proceed.    *Id.* at 2-5.    Thus, Plaintiff asks for a preliminary injunction prohibiting his transfer.    *Id.* at 6.

A temporary restraining order ("TRO") or preliminary injunction is a drastic remedy used primarily to preserve the status quo rather than to grant most or all of the substantive relief sought in the complaint.    *See, e.g., Cate v. Oldham*, 707 F.2d 1176, 1185 (11th Cir. 1983); *Fernandez-Roque v. Smith*, 671 F.2d 426, 429 (11th Cir. 1982).[2]    Factors a movant must show to be entitled to a TRO include the following: "(1) a substantial likelihood of ultimate success on the merits; (2) the TRO is necessary to prevent irreparable injury; (3) the threatened injury outweighs the harm the TRO would inflict on the non-movant; and (4) the TRO would serve the public interest."    *Ingram v. Ault*, 50 F.3d 898, 900 (11th Cir. 1995) (per curiam).

At this stage, Plaintiff has not sufficiently demonstrated a substantial likelihood on the merits.    Although Plaintiff has presented some newspaper articles and inmate statements in support of his allegations, these documents do not demonstrate that the named Defendants are ultimately likely to be liable on Plaintiff's claims.    The Court cannot conclude based on these documents and Plaintiff's assertions that Plaintiff has shown a substantial likelihood of success.

Moreover, Plaintiff has not established that a preliminary injunction is necessary to prevent irreparable harm.    In this regard, Plaintiff has not set forth any facts or evidence

---

[2]The standard for obtaining a TRO is the same as the standard for obtaining a preliminary injunction.    *See Parker v. State Bd. of Pardons & Paroles*, 275 F.3d 1032, 1034-35 (11th Cir. 2001) (per curiam); *Windsor v. United States*, 379 F. App'x 912, 916-17 (11th Cir. 2010) (per curiam).

to show that he is currently facing or likely to face a transfer to a different institution. Instead, Plaintiff's contention that he may be transferred appears to be purely speculative and conclusory. *See Bruce v. Reese*, 431 F. App'x 805, 807 (11th Cir. 2011) (affirming the denial of a preliminary injunction when the inmate did not provide any facts indicating that he would suffer further injury).

Additionally, as to whether the threatened injury outweighs any potential harm, prison officials are entitled to exercise their professional judgment in determining an inmate's institutional assignment. *See Bell v. Wolfish*, 441 U.S. 520, 547 (1979), (providing that prison administrators "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security"). Imposition of a preliminary injunction at this point might improperly interfere with that deference. For the same reason, Plaintiff has not shown that it is in the public interest to issue such an injunction. Therefore, it is **RECOMMENDED** that Plaintiff's motion for a preliminary injunction be **DENIED**.

**PRELIMINARY REVIEW OF PLAINTIFF'S COMPLAINT**

I.    Standard of Review

The PLRA directs courts to conduct a preliminary screening of every complaint filed by a prisoner who seeks redress from a government entity, official, or employee. 28 U.S.C. § 1915A(a). Courts must also screen complaints filed by a plaintiff proceeding IFP. 28 U.S.C. § 1915(e). Both statutes apply in this case, and the standard of review is the same. "*Pro se* filings are generally held to a less stringent standard than those drafted

by attorneys and are liberally construed." *Carmichael v. United States*, 966 F.3d 1250, 1258 (11th Cir. 2020) (citation omitted). Still, the Court must dismiss a prisoner complaint if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); see also 28 U.S.C. § 1915(e).

A claim is frivolous if it "lacks an arguable basis either in law or in fact." *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008) (citations omitted). On preliminary review, the Court may dismiss claims that are based on "indisputably meritless legal" theories and "claims whose factual contentions are clearly baseless." *Id*. (citations omitted). A claim can be dismissed as malicious if it is knowingly duplicative or otherwise amounts to an abuse of the judicial process. *Daker v. Ward*, 999 F.3d 1300, 1308, 1310 (11th Cir. 2021) (affirming dismissal of duplicative complaint "in light of [prisoner's] history as a prolific serial filer").

A complaint fails to state a claim if it does not include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Factual allegations [in a complaint] must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555 (citations omitted). In other words, the complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Id*. at 556. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

To state a claim for relief under § 1983, a plaintiff must allege that (1) an act or omission deprived him of a right, privilege, or immunity secured by the Constitution or a statute of the United States; and (2) the act or omission was committed by a person acting under color of state law. *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995). If a litigant cannot satisfy these requirements or fails to provide factual allegations in support of his claim or claims, the complaint is subject to dismissal. *See, e.g.*, *Bingham v. Thomas*, 654 F.3d 1171, 1176-77 (11th Cir. 2011) (affirming dismissal of certain claims at preliminary screening because prisoner failed to allege sufficient facts to show a violation of his rights), *abrogated on other grounds by Wade v. McDade*, 106 F.4th 1251, 1255 (11th Cir. 2024) (en banc).

III.    <u>Factual Allegations</u>

In the complaint, Plaintiff asserts that, in September 2023, "Macon State Prison's ratio of inmates to correctional officers was approximately 1:200 or worse."   ECF No. 1-1 at 3.   The control booth in Plaintiff's dorm had been vacant for months, the panic buttons in the cells did not work, and no officers conducted security rounds overnight. *Id.*   Thus, the inmates did not have a way to alert the administration if there was an emergency during lockdown hours. *Id.*

On September 8, 2023, during lockdown hours, Plaintiff's cellmate attacked Plaintiff with an iron pole and tortured him for hours. *Id.*   Because there was no way to alert the administration, Plaintiff stayed under his bunk for several hours shielding himself with a fan to try to avoid being hurt by his cellmate. *Id.*   Other inmates cried for help but no officers were around to hear them. *Id.*

The next morning, two officers came to the dorm to get the kitchen workers, at which point Plaintiff received help. *Id.* at 4. Plaintiff was taken to the hospital, where his arm was put in a cast, and he received staples in his head. *Id.* Plaintiff was later diagnosed with post-traumatic stress disorder as a result of the incident. *Id.*

Plaintiff asserts that the Defendants, Warden Timothy Sales and Georgia Department of Corrections Commissioner Tyrone Oliver, were aware of dangerous conditions in Macon State Prison because they knew that the amount of supervision was unconstitutionally inadequate and that other inmates had been killed due to lack of supervision. *Id.* at 7-8. Plaintiff notes that these conditions have been established by a lawsuit relating to the death of another inmate, news reports regarding inadequate staffing and lack of supervision, and an investigation by the United States Department of Justice. *Id.* at 8-9.

IV.    Plaintiff's Claim

Plaintiff's allegations potentially raise a claim against Warden Sales and Commissioner Oliver for deliberate indifference to Plaintiff's safety. Jail and prison officials have a duty to protect inmates from violence at the hands of other inmates. *Mosley v. Zachery*, 966 F.3d 1265, 1270 (11th Cir. 2020). Not every instance of violence between inmates, however, "translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Rather, it is only "[a] prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate [that] violates the Eighth Amendment." *Id.* at 828. To state a claim for deliberate indifference to an inmate's safety, a prisoner must allege facts to

show: (1) a substantial risk of serious harm; (2) deliberate indifference to that risk; and (3) causation. *Bowen v. Warden Baldwin State Prison*, 826 F.3d 1312, 1320 (11th Cir. 2016); *Goodman v. Kimbrough*, 718 F.3d 1325, 1331 (11th Cir. 2013).

"The first element of an Eighth Amendment claim—a substantial risk of serious harm—is assessed under an objective standard." *Lane v. Philbin*, 835 F.3d 1302, 1307 (11th Cir. 2016) (internal citation omitted). To prevail, the prisoner must show "conditions that were extreme and posed an unreasonable risk of serious injury to his future health or safety." *Marbury v. Warden*, 936 F.3d 1227, 1233 (11th Cir. 2019) (quoting *Lane*, 835 F.3d at 1307). He can make this showing by demonstrating either a "general threat" to inmates based on dangerous conditions in the prison or particular area of the prison or an individualized risk based on a "specific threat" to the prisoner. *Id.* at 1233, 1235.

Claims based on a general risk involve the allegation that the conditions of confinement themselves pose a substantial risk of serious harm from inmate-on-inmate violence to all inmates forced to live under those conditions. Some courts have called this type of claim a generalized "failure-to-protect" claim. *See Wilson v. Dunn*, 618 F. Supp3d 1253, 1269-73 (N.D. Ala. 2022); *McKee v. Dunn*, No. 2023 WL 5103102, at *3 (M.D. Ala. Aug. 9, 2023). The Eleventh Circuit has recognized this type of claim as an "excessive risk of inmate-on-inmate violence" claim. *Purcell ex rel. Est. of Morgan v. Toombs Cnty., Ga.*, 400 F.3d 1313, 1322 (11th Cir. 2005). Regardless of how these claims are labelled, the burden to establish a substantial risk of serious harm because of a generalized threat is a heavy one. "[A] plaintiff must show 'more than a generalized

awareness of risk.'"  *Marbury*, 936 F.3d at 1234 (citation omitted).  Instead, "[t]o establish deliberate indifference based on a generalized risk, the plaintiff must show 'that serious inmate-on-inmate violence was the norm or something close to it.'"  *Id*. at 1233 (quoting *Purcell ex rel. Est. of Morgan v. Toombs Cnty., Ga*., 400 F.3d 1313, 1322 (11th Cir. 2005)).

To establish deliberate indifference, a plaintiff must plausibly allege that the defendant: (1) "was subjectively aware that the inmate was at risk of serious harm"; (2) "disregarded that risk"; and (3) "acted with 'subjective recklessness as used in the criminal law.'"  *Wade v. McDade*, 106 F.4th 1251, 1255 (11th Cir. 2024) (en banc) (quoting *Farmer*, 511 U.S. at 839).  The first prong—subjective awareness—requires "that the prison 'official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Rodriguez v. Sec'y for Dep't of Corr*., 508 F.3d 611, 617 (11th Cir. 2007) (quoting *Farmer*, 511 U.S. at 837).  "'[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.'"  *Wade*, 106 F.4th at 1257 (alteration in original) (quoting *Farmer*, 511 U.S. at 838).  "'Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence."  *Hale v. Tallapoosa Cnty*., 50 F.3d 1579, 1583 (11th Cir. 1995) (quoting *Farmer*, 511 U.S. at 842).  For example, the evidence may show "'that the risk was obvious.'"  *Id*.  (quoting *Farmer*, 511 U.S. at 842).

The second prong—disregard of the risk—is objective, and the facts must show that the defendant responded to the known risk in an objectively unreasonable manner. *Marbury*, 936 F.3d at 1233 (citation omitted). "A reasonable decision does not have to be a perfect decision, and it does not require that any potential harm was actually averted." *Stalley v. Cumbie*, No. 22-10881, 2024 U.S. App. LEXIS 32885, at *32 (11th Cir. Dec. 30, 2024) (first citing *Farmer*, 511 U.S. at 844; and then citing *Mosley v. Zachery*, 966 F.3d 1265, 1271-72 (11th Cir. 2020)).

The third prong—subjective recklessness—is satisfied only if the plaintiff shows "that the defendant actually knew that his conduct—his own acts or omissions—put the plaintiff at substantial risk of serious harm." *Wade*, 106 F.4th at 1253. Even when a defendant has subjective knowledge of a serious risk, "a defendant who 'responds reasonably' to [such] a risk . . . 'cannot be found liable' under the Eighth Amendment." *Id*. at 1255 (quoting *Farmer*, 511 U.S. at 845). "Each individual [d]efendant must be judged separately and on the basis of what that person knows." *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008). A defendant cannot be deliberately indifferent to an excessive risk of inmate violence unless he "had the capability (authority and means) to provide adequate security and did not do so." *Williams v. Bennett*, 689 F.2d 1370, 1389 (11th Cir. 1982).[3]

---

[3]As one court noted, there is overlap between deliberate indifference and causation: "To be clear, authority and means to remedy the excessive risk of inmate violence bears directly on causation; however, it overlaps with deliberate indifference because an official can rarely manifest a deliberately indifferent state of mind by failing to do something that was not in the official's power to do. Accordingly, the court considers authority and power as to deliberate indifference and causation." *Barefield v. Dunn*, 688 F. Supp. 3d 1026, 1075

To establish causation, "the plaintiff must show a 'necessary causal link' between the officer's failure to act reasonably and the plaintiff's injury." *Marbury*, 936 F.3d at 1233 (citation omitted). This inquiry focuses "on whether an official's acts or omissions were the cause—not merely a contributing factor—of the constitutionally infirm condition." *LaMarca v. Turner*, 995 F.2d 1526, 1538 (11th Cir. 1993). "[T]he 'critical' question is whether [the defendant] was 'in a position to take steps that could have averted the [injury] . . . but, through [deliberate] indifference, failed to do so.' To determine whether [the defendant] caused [the] injury, [the Court] look[s] at his 'duties, discretion, and means.'" *Rodriguez*, 508 F.3d at 622 (citation omitted). Causation is demonstrated when the plaintiff shows a defendant "(1) 'had the means substantially to improve' the inmate's safety, (2) 'knew that the actions he undertook would be insufficient to provide [the inmate] with reasonable protection from violence,' and (3) had 'other means [] available to him which he nevertheless disregarded.'" *Id*. (alteration in original) (citation omitted).

Plaintiff alleges that there was a risk of harm because Macon State Prison houses violent inmates and many inmates have been injured or killed. He further asserts that an emergency situation during lockdown hours would be unlikely to be addressed for several hours because officers are not present in the dorms during those hours, they do not conduct regular checks of the dorms, and there is no way for the prisoners to reach any officers or administrators, such as through panic buttons.

---

n.28 (M.D. Ala. 2023).

Plaintiff concedes that the Defendants were not aware of a specific threat to Plaintiff from his cellmate, but he asserts that they knew about the dangerous conditions generally. Plaintiff contends that multiple other inmates have been killed due to the level of violence coupled with the lack of supervision in the prison. Moreover, Plaintiff contends that Sales and Oliver were both aware of the dangerous conditions because of a prior lawsuit arising out of the murder of an inmate, multiple news stories relating to dangerous conditions in the prison, and a Department of Justice investigation. Despite this knowledge, Sales and Oliver allowed the conditions to persist. These allegations are sufficient to allow Plaintiff to proceed on his deliberate indifference to safety claim against Defendants Warden Timothy Sales and Commissioner Tyrone Oliver.

IV.    Conclusion

For the foregoing reasons, Plaintiff's claims that Defendants Warden Timothy Sales and Commissioner Tyrone Oliver were deliberately indifferent to his safety shall proceed for further factual development. It is **RECOMMENDED**, however, that Plaintiff's motion for preliminary injunction be **DENIED**.

## OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to these recommendations with Marc T. Treadwell, United States District Judge, **WITHIN FOURTEEN (14) DAYS** after being served with a copy of this Recommendation. The parties may seek an extension of time in which to file written objections, provided a request for an extension is filed prior to the deadline for filing written objections. Objections to the Recommendation are limited in length to twenty (20) pages. A party seeking permission

to exceed these limitations shall do so by filing a written motion no later than five (5) days in advance of the deadline for filing objections and by specifying the number of pages requested.   Failure to object in accordance with the provisions of § 636(b)(1) waives the right to challenge on appeal the district judge's order based on factual and legal conclusions to which no objection was timely made.   *See* 11th Cir. R. 3-1.

### ORDER FOR SERVICE

Having found that Plaintiff has made colorable constitutional violation claims against Defendants Warden Timothy Sales and Commissioner Tyrone Oliver, it is accordingly **ORDERED** that service be made on Defendants and that they file an Answer, or such other response as may be appropriate under Rule 12, 28 U.S.C. § 1915, and the Prison Litigation Reform Act.   Defendants are reminded of the duty to avoid unnecessary service expenses, and of the possible imposition of expenses for failure to waive service pursuant to Rule 4(d).

### DUTY TO ADVISE OF ADDRESS CHANGE

During the pendency of this action, all parties shall keep the Clerk of this Court and all opposing attorneys and/or parties advised of their current address.   Failure to promptly advise the Clerk of a change of address may result in the dismissal of a party's pleadings.

### DUTY TO PROSECUTE ACTION

Plaintiff is also advised that he must diligently prosecute his Complaint or face the possibility that it will be dismissed under Rule 41(b) of the Federal Rules of Civil Procedure for failure to prosecute.   Defendants are similarly advised that they are expected to diligently defend all allegations made against them and to file timely dispositive motions

as hereinafter directed. This matter will be set down for trial when the Court determines that discovery has been completed and that all motions have been disposed of or the time for filing dispositive motions has passed.

## FILING AND SERVICE OF MOTIONS, PLEADINGS, AND CORRESPONDENCE

It is the responsibility of each party to file original motions, pleadings, and correspondence with the Clerk of Court. A party need not serve the opposing party by mail if the opposing party is represented by counsel. In such cases, any motions, pleadings, or correspondence shall be served electronically at the time of filing with the Court. If any party is not represented by counsel, however, it is the responsibility of each opposing party to serve copies of all motions, pleadings, and correspondence upon the unrepresented party and to attach to said original motions, pleadings, and correspondence filed with the Clerk of Court a certificate of service indicating who has been served and where (i.e., at what address), when service was made, and how service was accomplished.

## DISCOVERY

Plaintiff shall not commence discovery until an answer or dispositive motion has been filed on behalf of the Defendant from whom discovery is sought by the Plaintiff. The Defendant shall not commence discovery until such time as an answer or dispositive motion has been filed. Once an answer or dispositive motion has been filed, the parties are authorized to seek discovery from one another as provided in the Federal Rules of Civil Procedure. The deposition of the Plaintiff, a state/county prisoner, may be taken at any time during the time period hereinafter set out provided prior arrangements are made with

his custodian. **Plaintiff is hereby advised that failure to submit to a deposition may result in the dismissal of his lawsuit under Rule 37 of the Federal Rules of Civil Procedure.**

IT IS HEREBY ORDERED that discovery (including depositions and the service of written discovery requests) shall be completed within 90 days of the date of filing of an answer or dispositive motion by the Defendant (whichever comes first) unless an extension is otherwise granted by the court upon a showing of good cause therefor or a protective order is sought by the defendant and granted by the court. This 90-day period shall run separately as to Plaintiff and Defendant beginning on the date of filing of Defendant's answer or dispositive motion (whichever comes first). The scheduling of a trial may be advanced upon notification from the parties that no further discovery is contemplated or that discovery has been completed prior to the deadline.

Discovery materials shall not be filed with the Clerk of Court. No party shall be required to respond to any discovery not directed to him/her or served upon him/her by the opposing counsel/party. The undersigned incorporates herein those parts of the **Local Rules** imposing the following limitations on discovery: except with written permission of the court first obtained, **interrogatories** may not exceed TWENTY-FIVE (25) to each party, **requests for production of documents and things** under Rule 34 of the Federal Rules of Civil Procedure may not exceed TEN (10) requests to each party, and **requests for admissions** under Rule 36 of the Federal Rules of Civil Procedure may not exceed FIFTEEN (15) requests to each party. No party shall be required to respond to any such requests which exceed these limitations.

**REQUESTS FOR DISMISSAL AND/OR JUDGMENT**

The Court shall not consider requests for dismissal of or judgment in this action, absent the filing of a motion therefor accompanied by a brief/memorandum of law citing supporting authorities.  Dispositive motions should be filed at the earliest time possible, but in any event no later than one hundred - twenty (120) days from when the discovery period begins unless otherwise directed by the Court.

**SO ORDERED AND RECOMMENDED**, this 21st day of August, 2025.


s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge